T.C. Summary Opinion 2017-86

UNITED STATES TAX COURT

ANDREY ANDREYEVICH DOVZHENOK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19807-13S.                    Filed November 30, 2017.

Andrey Andreyevich Dovzhenok, pro se.

Nancy P. Klingshirn, for respondent.

SUMMARY OPINION

WHALEN, Judge:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Hereinafter, all section references are to the Internal Revenue Code, as amended

and in effect for 2009 and 2010, the taxable years in issue, unless stated otherwise, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $1,761 and $1,993 in petitioner's 2009 and 2010 Federal income tax, respectively. The sole issue for decision is whether the payments that petitioner received from Indiana University-Purdue University Indianapolis (IUPUI) totaling $18,917 during 2009 and $19,708 during 2010 are exempt from Federal income taxation by the United States under the Convention for the Avoidance of Double Taxation, Russ.-U.S., June 17, 1992, Tax Treaties (CCH) para. 8003 (treaty).

## Background

Some of the facts have been stipulated and the stipulation of facts filed by the parties, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner resided in Cincinnati, Ohio, when he filed his petition in this case.

Petitioner is a citizen of the Russian Federation. He is also a "resident" of the Russian Federation as that term is defined by article 4 of the treaty. He entered the United States in August of 2006, holding an F-1 student visa, to pursue a graduate degree in mathematics at IUPUI.

After two years of graduate study at IUPUI, during academic years 2006-07 and 2007-08, petitioner passed the examinations necessary to become an advanced graduate student in the department of mathematical sciences. For the next academic year, 2008-09, he was awarded a research assistantship. According to the letter from the director of graduate programs informing him of the award, petitioner's research assistantship included a stipend of $18,500, for the 12-month period beginning July 1, 2008, and ending June 30, 2009, plus tuition remission covering up to nine credit hours per semester, and health insurance. The director's letter stated that petitioner was responsible for paying certain out-of-pocket university fees and a small amount of tuition totaling approximately $500 per semester. The assistantship required petitioner to maintain full-time enrollment of at least six credit hours per semester, except during the summer, and he was required to maintain satisfactory progress toward his Ph.D. degree as a condition of receiving financial support. Finally, the letter stated that, as part of his assistantship appointment, he might be asked to perform some work for the department of mathematical sciences, such as emergency teaching and/or proctoring for faculty members who needed a substitute, and he might also be asked to grade for the course that his research mentor was teaching.

For each of the next two academic years, 2009-10 and 2010-11, petitioner was awarded a similar position, student academic appointee (SAA). The letter informing petitioner of each of those awards stated that the appointment would provide petitioner with financial support for graduate study toward a Ph.D. degree in mathematics and would require work for the department of mathematical sciences "at 50% FTE (full-time equivalent)". For academic year 2009-10 the SAA position included a 12-month stipend of $19,500, payable from July 1, 2009, to June 30, 2010, plus tuition remission covering up to nine credit hours per semester, and health insurance coverage (medical and dental). For academic year 2010-11 the SAA position included a 12-month stipend of $20,000, payable from July 1, 2010, to June 30, 2011, plus tuition remission covering up to nine credit hours per semester, and health insurance coverage (medical and dental). For each of those two academic years, petitioner was responsible for paying approximately $500 per semester for fees and a portion of the tuition that was not covered by the tuition remission.

The award letter for petitioner's SAA position for academic year 2009-10 stated that petitioner's financial support for that year was derived "from a grant awarded to Prof. Alexey Kuznetsov." The award letter for petitioner's SAA position for the following academic year, 2010-11, stated that petitioner's

financial support for that year was derived "from a grant awarded to Prof. Rubchinsky."

The award letter for each of the SAA positions required petitioner's full-time enrollment of at least six credit hours per semester, not including the summer, and required petitioner to make satisfactory progress toward his Ph.D. degree as a condition for continued financial support. Both letters described the work that petitioner would be required to perform, as follows:

> A 50% FTE appointment requires a maximum of 20 hours of work per week, during the fall and spring semesters. It also requires 10 hours of work per week during one of the two six-week summer sessions in 2010 (Summer I or Summer II), and you may choose the session during which you would like to work. You may request to do extra work during the summer beyond the amount required for the assistantship. If you are eligible and such work is assigned, you will receive extra payment for this work, in addition to receiving your usual stipend amount.
>
> During the fall and spring semesters, you will be assigned an amount of work equivalent to a maximum of 20 hours per week, which includes, but is not limited to, teaching, tutoring, grading, or mentoring. You may also be asked to do some work for the Department on an irregular basis, such as emergency teaching and/or proctoring for faculty members who need a substitute.

During calendar year 2009, IUPUI paid $18,917 to petitioner. This amount included payments made from January through June 2009 under petitioner's assistantship for academic year 2008-09, and payments made from July through

December 2009 under petitioner's SAA position for academic year 2009-10. The university reported that amount as wages on a Form W-2, Wage and Tax Statement, that it issued to petitioner following the close of calendar year 2009.

During calendar year 2010, IUPUI paid $19,708 to petitioner. This amount included payments made from January through June 2010 under petitioner's SAA position for academic year 2009-10, and payments made from July through December 2010 under petitioner's SAA position for academic year 2010-11. The university reported that amount as wages on a Form W-2 that it issued to petitioner following the close of calendar year 2010.

Petitioner filed U.S. income tax returns for both 2009 and 2010 on Forms 1040NR-EZ, U.S. Income Tax Return for Certain Nonresident Aliens With No Dependents. On each return he reported the total payments received from IUPUI for the year as "wages, salaries, tips, etc.", and he claimed that amount was exempt from U.S. taxation under the treaty. Petitioner did not report any tuition remission as income on either return. With each Form 1040NR-EZ, petitioner filed a Form 8843, Statement for Exempt Individuals and Individuals With a Medical Condition, on which he reported that he was a student and had attended IUPUI during the year. In due course after petitioner had filed each return, the Commissioner refunded the amount that had been withheld by IUPUI as Federal

income tax. For 2009 the amount withheld was $2,620. For 2010 the amount was $2,532.

Later, respondent issued a notice of deficiency to petitioner, determining tax deficiencies of $1,761 and $1,993 for the taxable years in issue. According to the notice of deficiency, the payments of $18,917 and $19,708 that petitioner received from IUPUI during 2009 and 2010 are includible in his taxable income. No mention of the tuition remission that petitioner received was made in the notice of deficiency.

Before respondent issued the subject notice of deficiency, petitioner submitted to the Internal Revenue Service (IRS) a Form 9210, Alien Status Questionnaire, concerning his alien status in the United States during taxable years 2009 and 2010. In that questionnaire, petitioner stated that he was employed in the United States and the name of his "employer" was "Indiana University-Purdue University at Indianapolis Dept. of Mathematical Sciences". The questionnaire asked whether there were "any restrictions on the length of his employment." In response, petitioner stated that his "employment was allowed as long as * * * [he] was a student."

Petitioner also submitted to the IRS a Form 9250, Questionnaire - Tax Treaty Benefits, to support the treaty benefits that he claimed for taxable years

2009 and 2010. In that questionnaire petitioner stated that he was claiming benefits under article 18 of the treaty. Part III of the questionnaire sets forth a series of six statements for the taxpayer to complete. As completed by petitioner, question 4 states: "I received my salary from Indiana U Purdue U Indianapolis." As completed by petitioner, question 6 states: "I was a full time student at Indiana University Purdue University Indianapolis." Petitioner did not complete question 5, which states as follows: "I received my grant from [blank]. If you received a grant, please enclose a copy." Nothing was enclosed with the completed form.

## Discussion

The only issue petitioner has raised in these proceedings is whether the payments he received from IUPUI during 2009 and 2010, amounting to $18,917 and $19,708, respectively, are exempt from U.S. taxation under article 18 of the treaty, which provides as follows:

> 1. An individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other State for the primary purpose of:
>
> a) studying at a university or other accredited education institution in that other State, or
>
> b) securing training required to qualify him to practice a profession or professional specialty, or

c) studying or doing research as a recipient of a grant, allowance, or other similar payments from a governmental, religious, charitable, scientific, literary, or educational organization,

shall be exempt from tax by that other State with respect to payments from abroad for the purpose of his maintenance, education, study, research, or training, and with respect to the grant, allowance, or other similar payments.

In summary, article 18 of the treaty deals with payments received by an individual from one contracting state, Russia in this case, who is temporarily present in the other state, the United States in this case, for the primary purpose of (a) studying at a university or other accredited educational institution; (b) securing training required to qualify him to practice a profession or professional specialty; or (c) studying or doing research as a recipient of a grant, allowance, or other similar payments from a governmental, religious, charitable, scientific, literary, or educational institution.

In the case of such an individual, article 18 provides that two types of payments are exempt from taxation by the host country (i.e., the United States). The first type of exempt payment is one received by the individual from abroad for the purpose of the individual's maintenance, education, study, research, or training. The second type of exempt payment is a "grant, allowance, or other similar payment[ ] from a governmental, religious, charitable, scientific, literary,

or educational organization".  Section 894(a) provides that the provisions of the Internal Revenue Code are to be applied to a taxpayer with due regard to any treaty obligations of the United States which apply to the taxpayer.

Petitioner argues that the payments he received from IUPUI during 2009 and 2010 fall under the second type of exempt payment.  He claims that he was temporarily present in the United States for the primary purpose of studying or doing research as a recipient of a grant, allowance, or other similar payment from IUPUI, an educational organization.  Therefore, he claims that the subject payments are exempt from tax by the United States under article 18 of the treaty.  The burden of proving that the subject payments are exempt from taxation by the United States rests with petitioner.  See Rule 142(a).

The record makes it clear that petitioner's stipends from IUPUI during 2009 and 2010 were compensation for his services to the department of mathematical sciences at IUPUI.  Each of the three letters notifying petitioner that he had been awarded a research assistantship or a student academic appointee position states that petitioner would be required to work for the department of mathematical sciences as a condition of receiving the stipend payments.  In other words, IUPUI required a substantial quid pro quo from petitioner in the form of his services.  See Bingler v. Johnson, 394 U.S. 741 (1969).  During academic year 2008-09

petitioner provided his services as a researcher for his adviser. In the following two academic years, 2009-10 and 2010-11, the award letters stipulated that petitioner's appointment was "at 50% FTE (full-time equivalent) and will require work for the Department." During each of those academic years, in addition to providing research services, petitioner graded and taught one course during each of the two summer sessions. IUPUI provided petitioner with an office and health insurance. IUPUI withheld income taxes on the payments to petitioner, and it issued Forms W-2 to him at the close of each of the years in issue. Furthermore, in his Form 9210 petitioner stated that he was "employed" in the United States by IUPUI.

There is no evidence that petitioner was the recipient of a grant, allowance, or other similar payment. At trial petitioner acknowledged that he did not have a grant letter or a letter awarding a grant. He also acknowledged that he had no connection to the grants that had been awarded to the professors for whom he worked. Petitioner's Form 9250 acknowledged that he received a salary from IUPUI, and he provided no information regarding a grant. Accordingly, on the record of this case we find that petitioner has failed to prove that he was the recipient of a grant, allowance, or other similar payment and that he is exempt from United States income tax on the payments received from IUPUI during 2009

and 2010.  See <u>Sarkisov v. United States</u>, 95 A.F.T.R.2d (RIA) 2005-738 (Fed. Cl. 2005).

To reflect to foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.